Good morning, Your Honors. May it please the Court, David Pfaff appearing on behalf of Petitioner Mr. Boldmyagmar, and thank you for being willing to pass my case. I apologize for being late. The Bay Bridge is the Bay Bridge. It is. Your Honor, thank you. I'd like to start with the threshold issue of whether or not Mr. Boldmyagmar exhausted his administrative remedies. This Court has instructed us that the failure to include a brief with one's notice of appeal in itself is not fatal. The Lodhar decision, which we cite in our brief, and Vargas-Lopez, which is cited in the Lodhar decision, illustrate that the notice of appeal is critical. The brief itself may or may not actually delineate the issues that are relevant. But did the notice of appeal raise any translation or communication issues? Your Honor, it did. Specifically, it said translation or communication problems, the notice of appeal. Your Honor, I apologize. I don't believe the notice of appeal referred to translation issues. Okay. So there's no brief and there's no notice of appeal mentioning those issues. Is that – do I understand the facts right? Correct, Your Honor. However, what the notice of appeal does do in great detail, covering spanning seven pages, is it describes the substantial evidence test. Now, it doesn't use the word substantial evidence, but one can tell very clearly from the recitation of evidence and testimony that was given by Mr. Boldmyagmar that the very point of this notice of appeal is that the immigration judge failed to properly apply the substantial evidence test. That's not the question I asked you. The question is, did – was the BIA alerted to a possible problem with translation or communication problems? It was not, Your Honor. Now, why isn't that then waived for failure to exhaust? Your Honor, translation and communication, I would argue, is a subset of credibility, which is the substantial evidence test.  That's your argument. What's your support for that? I can only rest on my brief, Your Honor, as to that. I recognize that that is a tenuous argument. I think more powerful, though, is the fact that the substantial evidence criteria is delineated in the brief, and this is the Socop decision, where the failure to state the term of art which defines the argument is not fatal to the notice of appeal. And it interests me how this is achieved. But that's the case. And let's assume that, for the moment, that translation errors are off the table. What's in the record that you think compels a contrary conclusion to the IJs? Materiality. The materiality of Mr. Bowe Magmar's testimony as to the two violent assaults that he suffered at the hands of government agents. As to those incidents in 1998 and in 2000, he is very specific, he's clear, and he And I believe the immigration judge actually reviewed Mr. Bowe Magmar's body. Cuts and scars that last to this day. He describes being beaten and abused, and he identifies the persons as agents of the government who are hostile to him because of his business and political views. That testimony is clear, Your Honors. And frankly, what we see here is an immigration judge's decision which dwells on the inadequacies of Mr. Bowe Magmar's testimony, while at the same time, the notice of appeal dwells on all of the elements of a credible asylum claim that were presented. Materiality is the issue. Translation shows up in the transcript as a problem. Although I will acknowledge that the immigration judge did ask counsel whether or not his client was having trouble with interpretation. I'm not sure counsel would have known because it doesn't speak Mongolian. But the issue of materiality is clear. Mr. Bowe Magmar, although perhaps somewhat vague as to dates and times of donations, it's very clear as to the abuse he suffered, where it happens, what was inflicted on him, and why. And that is the issue which, frankly, is noticed in this appeal. That is the substantial evidence issue. It was the position of prior counsel that the immigration judge failed to properly apply the totality of the circumstances. And remembering, in this Court's decision in Lodha, we're reminded that documentation is not imperative if the testimony is credible as to the events which go to the heart of the abuse. But here the EIJ found your client not credible. How does that play into the analysis? Your Honor, the finding of adverse credibility comes from the immigration judge's refusal to look at the material testimony as to the two incidents that are relevant, most relevant, to the persecution of Mr. Bowe Magmar. What we see is a recitation of peripheral issues, whether or not he was properly describing amounts of money that he donated and to which party, whether or not he was properly describing the time in which he appeared or a date in which he appeared at a public rally or on television, whether or not his wife remembered exactly whether he came directly home from the hospital or stopped home first, went to the hospital and came back. That's all described in some detail. And admittedly, Mr. Bowe Magmar was less than clear about some of those events. I found the testimony about the amounts of money donated and when was completely inconsistent. He was, Your Honor. But he mixes up the years. He gets it off by the amounts. I mean, it's not just a year or two. It's four or five years. So why isn't that enough for the I.J. to support the I.J.'s decision? Because it does not go to the material testimony about the abuse that was inflicted on him. Mr. Bowe Magmar can be wrong. But our case law really doesn't say we have to disbelieve a specific item. The I.J. has to disbelieve a specific item. I think he lied about his donations, and therefore I find his whole testimony incredible. Why can't the I.J. do that? Your Honor, because the donations were not the basis of the asylum claim. The basis of the asylum claim is the beating that he suffered and the scars that he has to this day. But the beating without an access to a political opinion doesn't get you relief under the I.N.A. So the political opinion, his political opinion was important. And the donations formed the basis of the political opinion. But the donations are not the political opinion, Your Honor. The donations are an indicia of his political opinion. But the political opinion is manifested in his business operation. It's manifested in his the articles that were submitted on his behalf that describe him as outspoken, an advocate for the opposition party. It's not just the donations. People are often wrong about numbers and dates, especially if they've been traumatized. Yeah. So you want us to disregard all of the inconsistencies essentially and look only at the what used to be called the heart of the claim? Yes, Your Honor. Not disregard, but at least put in the proper context, because those inconsistencies are peripheral to the heart of the claim. And the best we can do, don't you agree, is if we agreed with your position, that doesn't necessarily mean that you get relief here. It just means that we disagree with the adverse credibility finding and send it down for a new hearing, right? And, Your Honor, frankly, that would be our request. Right. I mean, it's the same. You seem to be arguing that we should just grant relief, and I don't think we can do that. Well, Your Honor, I didn't mean to interrupt, but we have stated our request in the alternative. Of course, frankly, realistically, our prayer for relief would be to send this case back for further review with instructions to properly apply the substantial evidence standard. That is what is noticed in this appeal. That is the issue. And it goes to the abuse that this man suffered. Do we have about a minute of 30 left? Do you want to reserve it? Thank you, Your Honor.  Ms. Chapman. All right. Elizabeth Chapman for the Attorney General. The immigration judge in this case issued a seven-page, single-space written decision, which identified seven well-supported inconsistencies, which individually and collectively provided an adequate basis to support the adverse credibility finding. Now, the government rests on its brief in this case that the court does not have jurisdiction because the one-size-fits-all argument he made in his notice of appeal was insufficient. But in this case, the court does not even need to determine whether or not it has general jurisdiction to hear the argument. And that's because the Petitioner did not raise any of the specific arguments he raises for the very first time in his opening brief to this Court. And therefore, he did not exhaust his administrative remedies with regards to any of these issues. What do you make of the fact that the BIA said we find no clear error in the immigration judge's adverse credibility finding? Doesn't that then entitle us to review that even though they may not have raised it properly? No, I don't believe so, because I don't believe that I think they did not – the Board was not on notice for any of the specific claims. Well, they may have said, since we're not on notice, we're not going to reach it. But having reached it, can't we then review it? And the Board kind of said both. The Board also said he did not raise any specific factual argument. That's not the sentence I'm asking you about. I'm asking you about the sentence that says we find no clear error in the immigration judge's adverse credibility finding. It sounds like they've reviewed the finding and are affirming it. Right. And what I'm saying here is even if the Court finds it does have general jurisdiction to hear this case, it doesn't have jurisdiction over any of the specific claims he's making, such as the inconsistency errors, such as whether or not it goes to the heart of the claim, because he does not raise any of those issues in his notice of appeal. He raises them for the very first time in his opening brief to this Court. So, for example, his entire challenge can be boiled down to three arguments. One is inconsistency errors. Two is that he says three out of the seven inconsistencies he properly explained before the immigration judge. And three, that two out of the seven inconsistencies do not go to the heart of the claim. What's the worst inconsistency in your opinion? I think that, in my opinion, and there were two. There are several. I think a lot of them very much do. That's one that supports you. Okay. Right. I know there's so many. I think that the inconsistency between the amount of money that he claims he donated in conjunction with his inability to explain the 1996 election goes directly to his claim that he was persecuted on account of his political involvement, because his political involvement was donating money to the political party. What specifically was the inconsistency? He's inconsistent about when he donates the money. The dates? Right. Which election cycle it is, essentially, because there's the 1996 election and the 2000. He says many times that he donates to the 2000, and then changes his testimony and says, in fact, he donated to the 1996. Why is that such a shocking thing to forget? Right. And the immigration judge said that fact alone was not fatal. But he was then asked to explain what the 1996 elections, and he was unable to explain it. He said that it was a struggle between two different parties for power, when it was in actuality a coalition. Two parties came together to form a coalition to defeat the communists. Now, he's claiming that he's being persecuted. He said that the two parties, there were splinter parties that came together. No. He actually said that they were struggling for power between each other. Okay. How's that a lot different than the last Republican primary? Oh, gosh. I'm not equipped to comment on that. We have candidate A calling candidate B a liar in the Republican debates, and then they come together in November. I mean, how is that different? Right. But if you were to characterize the political party, it wouldn't be a struggle between the two. He essentially was unable to describe the political world that he claims he's so deeply invested in. What's your next best contradiction? I think that the inconsistency between his testimony that he went directly to the hospital, he submitted documentary evidence that says he was brought to the hospital unconscious. Then his wife's letter states that he went home, and he was asked to explain this. And his explanation was completely implausible, that he was brought directly to the hospital, either unconscious or conscious, received bandage wounds for his multiple stab wounds, bandages for his multiple stab wounds, went home to say hello to his wife, then went back to the hospital where he remained for a month because of the severity of his injuries. It's implausible. And it goes to the heart of his claim because it's the incident upon which his entire asylum application is predicated, is the 2000 attack. And his inability to testify consistently or credibly about this attack goes directly to the heart of the claim. The Court has said that an inconsistency goes to the heart of a claim when it concerns events central to the petitioner's version of why he was persecuted and why he fled. This is central to his claim of why he fled the country. Now, going back, and I believe that you addressed this earlier, the inconsistencies the challenges that he raises, he raises for the very first time in his opening brief. For example, he claims that five out of the seven inconsistencies were the result of translation errors. He nowhere raises this before the immigration judge or the board. And as he conceded, his attorney told the immigration judge, when asked if there were translation errors, he stated, absolutely not. So neither the immigration judge or the board was on any way notice. And by asking this Court to determine whether or not there were translation errors, he's asking this Court to play the role of fact finder, which is not the Court's position in a petition for review. Now, the second challenge he raises is that three out of the seven inconsistencies were properly explained, but he doesn't anywhere address this in his notice of appeal. He doesn't put the board on notice as to these claims. The board was on no way on notice that he believed that three out of the seven inconsistencies were properly explained. And because the board was not put on notice, it did not have the opportunity to address these claims and to correct any errors. Now, this Court has said that the entire purpose for exhaustion is to allow the board or the administrative agency the opportunity to address issues, to address inconsistencies and to correct errors before judicial intervention. The board did not have the opportunity in this case. Well, the board thought it was addressing the adverse credibility finding. I mean, and there were all seven of them. I mean, if it thought that there were inconsistencies or that they were resolved that were fatal or not fatal, I should say, they could have corrected it. So when the board says it's on notice, by reaching an issue, we have to assume that they understood the issue, right? The board was not on notice to his specific claims, that he believes that three out of the seven, and only these specific three, were properly explained. The board was on no way, in no way on notice that he believed at the time that three out of the seven inconsistencies were properly explained. And similarly ---- But, you know, the board deals with adverse credibility in thousands of cases every  year. I think we presume they know what they're doing. They're not saying, oh, gosh, we didn't understand this. I mean, he explained the inconsistencies in his testimony and described his testimony or the thrust of his claim in the appeal. When I look back and we say, we see no clear error. But he did not ---- in his appeal, he did not identify any of the factual errors that he believes. You think if they put it to the board directly, if he'd argued to the board as he is here, that the board would have reached a different decision? I think the ---- I mean, I can't say what the board would have done, in all honesty. I don't know what the board would have done. Whether if he had raised, I believe in these three specific instances, I properly explained any inconsistency, such that there was no inconsistency and that was an error. I can't say what the board would have done, because the board may have agreed with him. But if we then think he properly exhausted that, I guess what you're saying is we better send it back because you don't know what the board would have done. If you believe that he did exhaust it? Yes. If we think his exhaustion, if we think he exhausted the adverse credibility challenge properly and you say you don't think the board was unnoticed and you don't know what the board would have done with it, I guess we're obligated to send it back? No, because in the end, even if he did exhaust, the inconsistencies went to the heart of his claim. The two inconsistencies we previously discussed, especially whether or not he donated the money when he claimed he did or whether or not he even donated the money, because it's not clear that he actually did. And his entire political claim is that he was persecuted on account of his political involvement. And he needs to demonstrate a nexus. Having wounds is not sufficient to get asylum because he needed to demonstrate a nexus. The nexus rests on his ability to show that he was politically involved. And in fact, in the 1998 incident, the only thing that ties the 1998 incident to any sort of political involvement is the statement he told to the immigration judge, did not include in his asylum application and did not tell the asylum officer, that the individuals who came told him, you donated money to the Democratic Party, give money to us. Whether or not he donated the money he claims he did to the Democratic Party is whether or not he did, when he did, how much he gave, is central and goes to the very heart of his claim that he was persecuted on account of his political involvement. Thank you. You have a minute and a half left. Thank you, Your Honors. It's clear from the record Mr. Boldmyagmar was not a political scholar. He ran an auto body shop. He was a working class man. He ran a construction supply business until that was shut down. He was confused about political parties. He was confused about numbers. He was beaten. Why isn't that sufficient? I mean, the Board says there's no clear error and we owe some deference to the factual findings of the IJ and the BIA. Why isn't that enough that he's confused and that he's got all of this wrong to support an adverse credibility finding on this petition for review? Because, Your Honor, and I know I'm repeating myself, the point is he is not confused about where and when he was beaten, how he was beaten, and why. He was very specific about that. What about the confusing story about how he got to the hospital? He was traumatized, Your Honor. Admittedly, the story is vague in parts, but the scars remain to this day, and they were viewed by the immigration judge. Well, I mean, how he got the scars is the issue. His testimony about how it happened is crystal clear. How his shoulder was broken or dislocated, how he was sliced and stabbed, there was no ambiguity there. No, except the judge didn't believe him. I understand, Your Honor. And that, of course, is the basis for the appeal that was filed, that the judge failed to properly apply the substantial evidence test. Had he done so, had he looked at the incidents that go to the heart of the asylum claim, he would have properly found that Mr. Bold by Agmar qualifies. Thank you for your argument. Thank you, Your Honor. The case just heard will be submitted for decision. And we appreciate both of your lengthy travels to get here today. We wish you well in your return.
judges: Schroeder, Thomas, Silverman